UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

EDWARD MAYNOR,

                Plaintiff,

v.                                      Case No. 3:18-cv-774-J-34PDB

SGT. LAVOIE, et al.,

                Defendants.

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff Edward Maynor, an inmate of the Florida penal system, initiated this action on June 15, 2018, by filing a document titled "Declaration of Edward Maynor," in which he seeks entry of a preliminary injunction and temporary restraining order (Doc. 1; Motion).[1] In support of his Motion, Maynor also filed the declaration of another inmate, Harry Davis (Doc. 2). Maynor captions his Motion with a case style in which he names as defendants the Warden of Florida State Prison, Sgt. Lavoie, and six un-named individuals: a lieutenant, four officers[2], and a nurse.

---

[1] The Clerk of Court filed the document as a civil rights complaint. Because Maynor did not submit a complaint, nor does he seek redress other than declaratory relief in the form of a preliminary injunction and temporary restraining order, supported with a proposed order (Doc. 1-1; Proposed Order), the Court construes his filing more appropriately as a motion.

[2] One of the officers may be named "Desues." See Motion at 4. Maynor claims that Lavoie battered him in retaliation for Maynor's "advisory" against Lavoie, which he filed the day before, on May 19, 2018. In the advisory, Maynor reported that, when inmates take a shower, Lavoie "sabotages" their cells "under the guise of a cell search." Id. at 5.

In the Motion, Maynor asserts that Lavoie and two unknown officers entered his cell on May 20, 2018, and beat him until he lost and regained consciousness.[3] Motion at 1-2. According to Maynor, after the beating, the officers brought him to see a nurse, not in the medical unit, but rather in a "group room." The nurse provided no treatment and only conducted a cursory examination. Id. at 3. At 1:20 a.m. the next day, Maynor sought emergency medical treatment because he was in extreme pain, but the officers who escorted him to the medical unit threatened and beat him, forcing him to say that he "no longer needed the medical emergency." Id. at 4. In the medical unit, Maynor saw the same nurse as the day before, and she again refused to treat him even though she "witnessed and observed what was going on." Id. After the nurse left, the officers continued beating Maynor. Id.

Maynor states that, following the May 20, 2018 incident, Lavoie falsely reported that the "use of force" resulted from Maynor's attempt to spit on Lavoie. Id. at 5. He alleges that the outcome of a resulting disciplinary hearing was unfavorable to him, asserting that the investigator's review of the video footage did not support his allegations. Id. at 6. In addition to the individual abuse Maynor claims to have suffered at the hands of Lavoie, Maynor asserts that Lavoie has a "reputation for being a corrupt, rogue, abusive, and racist officer," and that "staff abuse . . . occurs on a regular basis." Id. at 7. Specifically, he states that it is common "to see security staff escort an inmate to medical under the guise of a medical call-out to batter the inmate . . . in the presence of all medical personnel." Id. at 10. Maynor further asserts that the medical personnel collude with

---

[3] The declaration of inmate Davis confirms that he heard Sgt. Lavoie and two other officers approach Maynor's cell on May 20, 2018, and that he heard noises that sounded like "knocks and punch[e]s." He also heard Maynor "crying out in pain pleading for his life." See Doc. 2 at 2.

security officers to "downplay" inmate injuries following improper or egregious uses of force against them. Id.

Maynor complains that he continues to suffer extreme pain and distress, including chronic body pains, migraines, numbness in his face, distorted vision, breathing complications, and he reports the presence of blood with urination and bowel movements. Id. at 8, 10. He asserts that, since he has started preparing this lawsuit and filing grievances, he has been harassed and suffered an additional head injury that he believes may have been the result of being pushed or tripped while walking down stairs.[4] Id. at 9. Maynor requests that the Court order a review of Lavoie's personnel file and assist in his attempts to ensure that the prison officials preserve relevant video footage of the incidents. Id. at 5, 8. In the proposed order Maynor filed with his Motion, he seeks an order "enjoining the Defendants . . . from rendering inadequate medical care and continued staff abuse and harassment." See Proposed Order at 2.

The Court is of the opinion that injunctive relief is not warranted.

> A preliminary injunction is an "extraordinary and drastic remedy." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)). To secure an injunction, a party must prove four elements: (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) the injury outweighs whatever damage an injunction may cause the opposing party; and (4) an injunction is not adverse to the public interest. Id.

Citizens for Police Accountability Political Comm. v. Browning, 572 F.3d 1213, 1217 (11th Cir. 2009) (per curiam); Keister v. Bell, 879 F.3d 1282, 1287-88 (11th Cir. 2018). The

---

[4] Maynor says he has no independent recollection of how he fell down the stairs.

movant must clearly establish the burden of persuasion as to the four requisites. See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). Maynor has failed to carry his burden, and he has failed to comply with the strictures of the applicable Federal Rules of Civil Procedure and this Court's Local Rules.[5] As to Maynor's requests to order the prison officials to preserve video footage or to review Lavoie's personnel file, this Court lacks the authority to do so.

Not only is Maynor's filing insufficient to warrant injunctive relief, to the extent he is attempting to raise claims regarding his conditions of confinement or a denial of medical care, he has not filed a civil rights complaint form. The Court has approved the use of a civil rights complaint form for cases filed by prisoners pursuant to 42 U.S.C. § 1983. The form requires a plaintiff to include detailed information regarding the defendants he intends to sue, the plaintiff's litigation history, a statement of the plaintiff's claims and facts, and the relief the plaintiff requests. Here, Maynor has not filed a complaint, nor has he provided the Court with all of the information required by the civil rights complaint form. If Maynor chooses to file a civil rights complaint, he may do so on the proper form, submit a copy of the form for each Defendant, and submit the filing fee or an affidavit of indigency in support of a motion to proceed as a pauper. Moreover, his complaint should be limited to a single incident or related incidents. If the claims are not related to the same basic issue or incident, then each claim must be addressed in a separate complaint.

In addition, if he names defendants who hold supervisory positions over those who allegedly violated his constitutional rights, such as the Warden, Maynor should be aware that supervisory liability (respondeat superior) has been rejected as a theory of recovery

---

[5] See Fed. R. Civ. P. 65; Local Rules 3.01(a), 4.05(b)(3)-(4), 4.06(b)(1), Local Rules, United States District Court for the Middle District of Florida.

4

under § 1983. See Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1047 (11th Cir. 2014) (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)). Although personal participation is not specifically required for liability under § 1983, there must be some causal connection between the Defendant's actions and the alleged deprivation. See Reid v. Sec'y, Fla. Dep't of Corr., 486 F. App'x 848, 852 (11th Cir. 2012). One cannot be held liable for the actions or omissions of others, but can only be held responsible if he participated in the deprivation of another's constitutional rights or directed action or omission that resulted in such a deprivation.

To the extent Maynor seeks the Court's intervention in the handling of the grievances in which he reported the beatings or requested medical care, he has not stated a claim entitling him to relief. See Bingham v. Thomas, 654 F.3d 1171, 1177-78 (11th Cir. 2011) (recognizing prisoners have no constitutionally-protected interest in prison grievance procedures). Moreover, Maynor has not asserted a due process violation arising out of the disciplinary review hearing or the committee's decision. See Sandin v. Conner, 515 U.S. 472, 485 (1995). Indeed, Maynor does not state whether and what punishment was imposed following the disciplinary review hearing, nor does he assert that he was deprived due process. For the foregoing reasons, this case will be dismissed without prejudice to Maynor's right to initiate a civil rights action to address any allegedly unconstitutional conditions of his confinement, if he elects to file one.

Therefore, it is now

**ORDERED:**

1. Maynor's Motion for injunctive relief (Doc. 1) is **DENIED**.

2. This case is hereby **DISMISSED without prejudice** to Maynor's right to initiate a civil rights action in this Court, if he elects to do so.

3. The **Clerk** shall send Maynor a civil rights complaint form. If Maynor chooses to file a claim, he should not put this case number on the form because the Clerk will assign a new case number upon receipt.

4. The **Clerk** shall enter judgment dismissing this case without prejudice and close the file.

5. Given Maynor's allegations, the **Clerk** shall electronically send a copy of this Order and Plaintiff's Motion (Doc. 1) to the Inspector General and the Warden of Florida State Prison for an investigation into Maynor's assertions, if deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of June, 2018.

*MARCIA MORALES HOWARD*
United States District Judge

Jax-6
c: Edward Maynor